UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X
:
WAYNE CHIN,                                                           :        19-CV-2729 (ARR)
                                                                     :
                              *Petitioner*,                           :        NOT FOR ELECTRONIC
                                                                     :        OR PRINT PUBLICATION
          -against-                                                  :
                                                                     :
JOSEPH NOETH,                                                        :        **OPINION & ORDER**
                                                                     :
                              *Respondent*.                           :
                                                                     X
--------------------------------------------------------------------- X

ROSS, United States District Judge:

In this petition for a writ of habeas corpus under 28 U.S.C. § 2254, petitioner, Wayne Chin,

challenges his New York State conviction for murder in the second degree on fifteen grounds. Pet.,

ECF No. 1. The state opposes. Opp'n, ECF No. 14. For the following reasons, I deny Mr. Chin's

petition.

## BACKGROUND

On June 12, 2001, Renee Aarons was shot and killed in her green Lexus vehicle while

parked in front of 95 Linden Boulevard, Brooklyn, New York. Pet. 3. Twelve people near the

crime scene, as well as the victim's brother, who was in Manhattan, called 911 to report the crime.

*Id.* at 3 & n.2. Two eyewitnesses, Ms. Aarons's son, Rashawn Aarons, and Ms. Aarons's niece,

Aisha White, testified that they saw petitioner, Wayne Chin, Ms. Aaron's on-and-off boyfriend,

shoot Ms. Aarons from close range. Pet. 89–90; Trial Tr. Part Two 83:3–25, 146:5–147:14 ("Trial

Tr."), ECF No. 14-2; Affidavit of Marie John-Drigo ¶ 6 ("John-Drigo Aff."), ECF No. 14. Nearby

the crime scene, investigators found a gold Lexus belonging to petitioner. Pet. 6. A bloodhound

tracked a scent from the gold Lexus to a bus stop, where the trail ran cold. Trial Tr. 173:12–24,

239:19–240:1. The N.Y.P.D. seized both the green Lexus and the gold Lexus and kept the cars for two years before releasing them because of insufficient storage space. John-Drigo Aff. ¶ 20. Investigators retrieved the victim's jewelry and wallet from the green Lexus and gave them to the victim's mother. Pet. 20. Investigators also recovered the victim's cell phone from the green Lexus and dry-cleaning receipts from the gold Lexus. Pet. 8.

Ultimately, petitioner was charged with Ms. Aarons's murder, and after several years on the lam, he was tried in the Supreme Court of the State of New York, Kings County. John-Drigo Aff. ¶¶ 18–19, 22.

***Pre-Trial Proceedings***

Before trial, petitioner changed trial counsel twice. *Id.* ¶ 23. Phillip Smallman was the third lawyer set to represent petitioner at trial, but petitioner moved to substitute him with a fourth attorney because of a claimed breakdown in communication and an alleged conflict of interest. Pet. 14; John-Drigo Aff. ¶ 23. Specifically, petitioner had asked Mr. Smallman "to file a 'notice of defense' and to find and interview certain witnesses" concerning a potential alibi and "the investigator had advised that the witnesses could not be located." John-Drigo Aff. ¶¶ 25, 28; Sept. 9, 2009 Pre-Trial Tr. 3:3–13, Pet. Exs., ECF No. 1-1. Mr. Smallman explained to the trial court that he had hired an investigator who had a conflict of interest but promptly replaced that person. Sept. 9, 2009 Pre-Trial Tr. 3:17–4:8. Mr. Smallman also clarified that the new investigator struggled to locate requested witnesses because several years had passed since the incident. *Id.* at 4:9–18. As to the notice of defense, Mr. Smallman stated that he did not understand what petitioner meant by that. *Id.* at 5:2–4. Petitioner clarified that he meant an "alibi," and the trial court asked petitioner directly whether he had one. *Id.* at 5:5–8. Petitioner evaded the question, saying "Argument was it may be too late." *Id.* at 5:9–10. The trial judge then wondered aloud why

petitioner had not raised a potential alibi with either of his previous attorneys. *Id.* at 5:11–14. Then based on these facts, the trial court denied the motion to substitute Mr. Smallman as trial counsel. *Id.* at 5:15.

### Evidence at Trial

The evidence at trial included eyewitness testimony from Mr. Aarons and Ms. White that they saw petitioner shoot Ms. Aarons from close range.[1] Pet. 89–90; Trial Tr. 83:3–25, 146:5–147:14. The evidence also included two recordings of 911 calls made at the time of the shooting. The prosecutor stated in pre-trial proceedings that the master tape of the 911 calls from the day of the shooting had been destroyed, but that a copy of the 911 tape was available and had been turned over to Mr. Smallman. Trial Tr. Part One 16:15–23, ECF No. 14-1. The prosecution sought to admit Ms. White's 911 call into evidence. The recording reflects that Ms. White begged the 911 operator to send police and told them "he shot his girlfriend in the head" and "he shot her in front of her son." John-Drigo Aff. ¶ 14. The court found that admitting that recording did not violate petitioner's right to confrontation under the Sixth Amendment to the U.S. Constitution and that the call was admissible pursuant to the excited utterance and present sense impression exceptions to the rule against hearsay. Trial Tr. Part One 83:5–84:13. The prosecution later played Ms. White's 911 call during its opening statement and during Ms. White's direct examination. Trial Tr. 13:25, 149:15–150:11.

Another 911 call, made by eyewitness Deanna Cobbs, was not introduced into evidence. *Id.* at 274:11–14. In it, Ms. Cobbs stated that she saw two people leaving the scene of the shooting in a black Lexus, instead of petitioner's gold Lexus. *Id.* Instead of introducing the audio, Mr. Smallman elicited testimony from Detective Patrick Henn on cross-examination that an eyewitness

---

[1] Mr. Aarons also testified to the caliber of firearm used. Trial Tr. 83:6–7.

to the shooting reported that a different number of men had fled the scene in a car that was a different color than petitioner's gold Lexus. *Id.* at 276:6–11.

Petitioner also indicated that he intended to call Detective Crick, who had interviewed Parnell Gaston, another 911 caller.[2] *Id.* at 303:22–304:1; John-Drigo Aff. ¶ 34. Ms. Gaston had stated that:

> from the window of her fourth-floor apartment in the building across the street from the scene of the murder, she heard an argument coming from the street and observed a black male wearing a grey short set punching at a black female who was sitting in a black car. The male continued assaulting the female while standing outside the driver's door, while another individual, "a possible female Hispanic" was attempting to hold back the male stating a couple of times, "Don't do that Johnny." Ms. Gaston then heard two or more shots while observing flashes of light.

John-Drigo Aff. ¶ 34. The trial court warned petitioner's counsel that it would not admit hearsay evidence from Detective Crick. Trial Tr. 306:18–307:1. Ultimately, however, Detective Crick was retired and living in Georgia, outside the court's subpoena power. *Id.* at 314:6–8.

The prosecution asked Detectives Calabrese and Henn about the bloodhound who had detected a scent in petitioner's gold Lexus and followed it to a bus stop. *Id.* at 173:12–24, 239:19–240:1. The prosecution also referred to the bloodhound during opening statements. *Id.* at 16:10–14. Additionally, the prosecution called a medical examiner, Dr. Melissa Pasquale-Styles, who had reviewed the victim's clothing after her death and had found gunpowder residue. *Id.* at 324:25, 325:13–326:14. Later on, during a sidebar outside petitioner's presence, the parties agreed to admit the victim's death certificate, subject to redacting the facts that the victim died of "homicide" and was "shot by [an]other person." *Id.* 332:2–5.

During its deliberations, the jury submitted note 3A which included a request for "the

---

[2] Petitioner refers to this person as Odette Gaston, Pet. 3, but trial counsel referred to her as Parnell Gaston, Trial Tr. 303:22–23.

names of witnesses who met with the [District Attorney's Office] before trial." *Id.* at 437:7–9. The parties had all agreed that the note was "unclear" and "suggested that [the court] ask the jury for clarification." *Id.* at 437:20–21. The court responded by doing just that: "The parties and I are not quite clear exactly what you're asking for. So if you could, with some greater precision or specificity, tell us what it is that you're looking for. Obviously, we have to find whatever you're looking for in the transcript. So if you could tell us a little more clearly, you can take time to do that after we break." *Id.* at 440:4–11. The jury never followed up on its request and ultimately returned a guilty verdict. John-Drigo Aff. ¶ 40.

### Sentencing

On November 17, 2009, the trial court sentenced petitioner to twenty-five years to life imprisonment. *Id.* Petitioner was represented at sentencing by Jay Cohen. *Id.* Petitioner claims Mr. Cohen refused to file a motion to set aside the verdict under N.Y.C.P.L. § 330.30 because Mr. Smallman "was his friend and a good attorney." Pet. 40. Nevertheless, petitioner filed a *pro se* § 330.30 motion, which the trial court denied. Opp'n, Ex. III (attached as Ex. II), ECF No. 14-4.

### Appeal and Post-conviction Motions

Petitioner filed a *pro se* motion to vacate under N.Y.C.P.L. § 440.10 on February 7, 2012. He claimed that:

> 1) trial counsel was ineffective, and his improper conduct deprived defendant of due process and a fair trial; 2) improper conduct by the court deprived defendant of his rights to due process and a fair trial; 3) improper and prejudicial conduct and fraud perpetrated by the prosecutor deprived defendant of his rights to due process and a fair trial; and 4) evidence at trial was obtained in violation of his rights under the New York State constitution.

John-Drigo Aff. ¶ 42; Opp'n, Ex. II, ECF No. 14-3. The trial court denied this motion on February 20, 2013, finding that most of petitioner's claims were record-based and thus procedurally barred. *People v. Chin*, 2013 N.Y. Misc. LEXIS 896 (N.Y. Sup. Ct. Kings Cty. Feb. 20, 2013).

On May 28, 2013, the Second Department granted petitioner leave to appeal this decision, and on June 17, 2013, it granted him leave to consolidate that with his direct appeal. John-Drigo Aff. ¶¶ 45–46. Anna Pervukhin represented petitioner in these appeals. *Id.* ¶ 47. Petitioner's counseled brief on direct appeal raised two points: (1) that admitting Ms. White's 911 call violated due process and the right to a fair trial and playing it during opening statements was unduly prejudicial; and (2) allowing the prosecution to elicit from multiple witnesses that the victim's son named petitioner as the shooter violated the right to a fair trial. Opp'n, Ex. V, ECF No. 14-4. Petitioner submitted a *pro se* supplemental brief that raised seven additional points, including claiming ineffective assistance of trial counsel, challenging various evidentiary rulings, asserting a violation of his right to be present for trial, and alleging prosecutorial misconduct. Opp'n, Ex. VII, ECF No. 14-5. Petitioner's counseled brief appealing the § 440.10 decision raised one point: that the trial court erred in summarily denying the motion because it included a potentially exculpatory police report that was never entered into evidence at trial. Opp'n, Ex. IX, ECF No. 14-5. Petitioner filed a *pro se* supplemental brief that raised four additional points, including ineffective assistance of trial and sentencing counsel, fraud on the court, and prosecutorial misconduct. Opp'n, Ex. XI, ECF No. 14-6.

The Second Department denied both appeals on March 15, 2017. As to the direct appeal, the Second Department determined that "the 911 call was properly admitted into evidence under the excited utterance and present sense impression exceptions to the hearsay rule, as the probative value of this evidence outweighed any prejudicial effect." *People v. Chin*, 49 N.Y.S.3d 517 (2d Dep't 2017). It also found that "the Supreme Court properly admitted the testimony of the police officer and the victim's niece concerning the statements of the victim's son at the scene identifying the defendant as the shooter under the excited utterance exception to the hearsay rule, and that

testimony did not constitute improper bolstering." *Id.* It then summarily denied petitioner's ineffective assistance of counsel claims and all "remaining contentions." *Id.* As to the § 440.10 decision, the Second Department determined that petitioner "was not deprived of the effective assistance of counsel" and rejected the other arguments petitioner raised in his supplemental brief. *People v. Chin*, 48 N.Y.S.3d 617 (2d Dep't 2017). The New York Court of Appeals denied leave to appeal both judgments. *People v. Chin*, 29 N.Y.3d 1124 (2017).

In December 2017, petitioner moved before the Second Department for a writ of error coram nobis, claiming ineffective assistance of appellate counsel. Opp'n, Ex. XIII, ECF No. 14-7. The Second Department denied the writ on July 25, 2018. *People v. Chin*, 77 N.Y.S.3d 643 (2d Dep't 2018). The New York Court of Appeals denied leave to appeal. *People v. Chin*, 32 N.Y.3d 1110 (2018). Petitioner sought a second writ of error coram nobis in October 2018, claiming ineffective assistance of counsel in the appeal of the 440.10 decision. Opp'n, Ex. XV, ECF No. 14-8. The Second Department denied the writ again on February 20, 2019. *People v. Chin*, 92 N.Y.S.3d 685 (2d Dep't 2019). The New York Court of Appeals denied leave to appeal. *People v. Chin*, 33 N.Y.3d 1030 (2019).

***Procedural History***

The court docketed the instant petition for a writ of habeas corpus on May 6, 2019. Pet. Judge Roslynn R. Mauskopf issued an order to show cause on July 8, 2019, directing the state to respond. Order Show Cause, ECF No. 6. The state filed its opposition on September 23, 2019, Opp'n, and petitioner filed his traverse on January 31, 2020, Traverse, ECF No. 28.

On June 17, 2019, petitioner moved for appointment of counsel, Mot. Appoint Counsel, ECF No. 4, and on July 1, 2019, petitioner moved to allocate funds for a forensic audio expert to investigate the 911 audio recording for evidence, Mot. Expert Funds, ECF No. 5. Judge Mauskopf

denied these motions on May 18, 2020, finding that petitioner failed to establish that allocation of funds for a forensic expert are reasonably necessary for his defense and determining that the petition can be resolved on the written submissions. Op. & Order 6–8, ECF No. 30. The petition was reassigned to me on July 2, 2021. Text Order (July 2, 2021).[3]

## LEGAL STANDARD

A district court may issue a writ of habeas corpus under 28 U.S.C. § 2254 to individuals in state custody if their state court proceedings: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[My] review . . . is 'highly deferential' to the state courts, 'demand[ing] that state-court decisions be given the benefit of the doubt.'" *Cardoza v. Rock*, 731 F.3d 169, 177 (2d Cir. 2013) (quoting *Hardy v. Cross*, 565 U.S. 65, 66 (2011)). "To conclude that a state court decision involved an unreasonable application of clearly established federal law, the petitioner must show that the state court applied the law in a manner that was 'objectively unreasonable.'" *Moss v. Colvin*, 845 F.3d 516, 520 (2d Cir. 2017) (quoting *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015)). "A state court determination that a claim lacks merit is not objectively unreasonable if 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Id*. (quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

Because the petitioner is proceeding *pro se*, I review his petition "with a lenient eye," *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983), and "interpret[] [it] as raising the

---

[3] Petitioner submitted a letter on July 21, 2021, requesting remand of his § 440.10 proceedings because the judge who decided the motion has been suffering from Alzheimer's disease. Letter, ECF No. 41.

strongest arguments it suggests," *Then v. Keyser*, No. 19-CV-1618 (KAM), 2020 WL 6273945, at

*4 (E.D.N.Y. Oct. 26, 2020) (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

## DISCUSSION

Petitioner has raised fifteen grounds for a writ of habeas corpus that I have grouped into

seven categories. For the following reasons, I cannot determine that the state court unreasonably

applied federal law on any of these grounds.

### I.   Evidentiary Rulings

### A.  Ms. White's 911 call

Petitioner argues that the trial court impermissibly admitted Ms. White's 911 call into

evidence in violation of his Sixth Amendment right to a fair trial, but this claim is procedurally

barred. Pet. 63–64; Traverse 38–41. A district court "will not review questions of federal law

presented in a habeas petition when the state court's decision rests upon a state-law ground that is

independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S.

449, 465 (2009) (citation and quotation marks omitted). Here, on direct appeal, the Second

Department found petitioner's challenge to the admission of Ms. White's 911 tape procedurally

barred by N.Y.C.P.L. § 470.05(2), the New York contemporaneous objection rule. *Chin*, 49

N.Y.S.3d at 517. The Second Circuit has held that "the contemporaneous objection rule is a firmly

established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 104

(2d Cir. 2011). Therefore, I may review petitioner's claim only if he shows the Second

Department's application of this rule was so "'exorbitant' as to render it 'inadequate to stop

consideration of a federal question." *Whitley v. Ercole*, 642 F.3d 278, 287 (2d Cir. 2011) (quoting

*Lee v. Kemna*, 534 U.S. 362, 376 (2002)). But petitioner cannot meet this standard. New York

courts "routine[ly]" apply the contemporaneous objection rule to bar review of "unpreserved

claims regarding admission of particular evidence." *Id.* at 288 (citing *People v. McClain*, 672 N.Y.S.2d 503, 504 (3d Dep't 1998)). And Mr. Chin has not shown that his case presents exceptional or unique circumstances that would change the analysis here. *Id.* Therefore, his claim is procedurally barred.

In any event, petitioner's claim fails on the merits. Admitting an out-of-court statement does not violate a defendant's confrontation rights if the state demonstrates that the statement falls under a hearsay exception that is "firmly rooted [in] longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements." *Brown v. Keane*, 355 F.3d 82, 87 (2d Cir. 2004) (quoting *Idaho v. Wright*, 497 U.S. 805, 817 (1990)). The Supreme Court has ruled that excited utterances are just such an exception. *White v. Illinois*, 502 U.S. 346, 355–56 (1992). An excited utterance is a statement made "in a moment of excitement – without the opportunity to reflect on the consequences of one's exclamation." *Id.* at 356. But "[t]o be competent as evidence . . . the declarant's factual assertion must rest on personal knowledge." *Brown*, 355 F.3d at 90. Here, Ms. White called the police while witnessing petitioner punch the victim. Trial Tr. 145:25–146:2. While on the phone with them, she saw petitioner reach for his gun at his waistband and shoot the victim through the car window. *Id.* at 146:6–9. The recording reflects that Ms. White begged the 911 operator to send police and told them "he shot his girlfriend in the head" and "he shot her in front of her son." John-Drigo Aff. ¶ 14. Ms. White clearly made these statements "in a moment of excitement," *White*, 502 U.S. at 356, and they were based on her personal knowledge of "observing" the shooting, *Brown*, 355 F.3d at 90 (citing *United States v. Jones*, 299 F.3d 103, 107 (2d Cir. 2002)).[4] Therefore, petitioner's claim challenging the admission

---

[4] The prosecution also laid a proper foundation for the 911 recording. Ms. White testified that she recognized the cassette and had an opportunity to listen to it. Trial Tr. 149:10–150:1.

of the 911 tape fails both procedurally and on the merits.

### B.  Statements by Ms. Cobb and Ms. Gaston

Petitioner claims that two additional evidentiary rulings deprived him of a fair trial: (1) the trial court's decision to preclude him from calling Detective Crick to testify about his interview with Ms. Gaston; and (2) the trial court's limitation of Detective Henn's testimony regarding statements by Ms. Cobbs. Pet. 62. The Second Department rejected both of these arguments as meritless on direct appeal. *Chin*, 49 N.Y.S.3d 517; Ex. VII at 43–51.

"[H]abeas corpus relief does not lie for errors of state law, and that necessarily includes erroneous evidentiary rulings." *Scrimo v. Lee*, 935 F.3d 103, 114 (2d Cir. 2019) (citation and quotation marks omitted). To prevail on a claim that an evidentiary error amounted to a deprivation of due process, a petitioner must show that the error was so pervasive as to have denied him a fundamentally fair trial. *United States v. Agurs*, 427 U.S. 97, 108 (1976).

Here, the trial court had communicated that it would preclude Detective Crick's testimony as hearsay unless an exception applied. Trial Tr. 306:18–307:1. There is no question that Ms. Gaston's statements to Detective Crick were made out of court and offered "to prove the truth of the matter asserted."[5] Fed. R. Evid. 801(c). And petitioner did not invoke any hearsay exception. John-Drigo Aff. ¶ 35. Moreover, any error was harmless because Detective Crick was unavailable to testify. He was living in Georgia, beyond the court's subpoena powers. Trial Tr. 314:6–8.

As to Ms. Cobbs, prosecutors objected to Detective Henn's testimony regarding her statements as hearsay, but the trial court nevertheless allowed the key part of that testimony to come in—that "an eyewitness . . . gave a description of a different vehicle and different amount of

---

[5] Petitioner claims they were not offered to prove the truth of the matter asserted but were "made during the police investigation." Pet. 62. But this is not a recognized hearsay exception. *See generally* Fed. R. Evid. 801.

people leaving the scene." *Id.* at 272:25–276:14. Petitioner does not invoke any hearsay exception that would allow more detailed descriptions of Ms. Cobbs's statements to come in. Pet. 62. Moreover, I find that any error would be harmless because Ms. Cobbs's statements concerning the color of the car the shooter left in and the number of people in that car had little, if any, exculpatory value given the eyewitness testimony of Mr. Aarons and Ms. White. Therefore, the state court's decision rejecting this claim was reasonable.

## II.    Destruction of Evidence and Fraud Upon the Court

Petitioner claims that police "wilfully destroyed all the original 911 master tape recordings within forty-eight hours of the alleged crime because of the exculpatory nature of Ms. White's statement to 911 operator," which violated his due process and fair trial rights. Pet. 57. Petitioner then alleges that the copy of the 911 tape was altered and prosecutors perpetuated a fraud upon the court in relying on that copy. Pet. 65. Petitioner also claims Detective Henn improperly returned the victim's jewelry to her mother and "wilfully destroyed the dry cleaners' receipts" found in petitioner's car, "the victim's cell-phone," and the petitioner's and victim's cars themselves "because of their exculpatory values." Pet. 58, 71. The Second Department dismissed all of these claims as meritless both on direct appeal and in reviewing the trial court's decision on petitioner's § 440.10 motion. *Chin*, 49 N.Y.S.3d at 517; *Chin*, 48 N.Y.S.3d at 617; Ex. VII at 39–40, 68, 72; Ex. XI at 6–8, 35–36, 59–61.

"[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56 n.*. "Fraud upon

the court must be established by clear and convincing evidence." *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002). Knowingly "submitting false evidence to a court may rise to the level of a fraud on the court." *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 395 (S.D.N.Y. 2010).

Here, petitioner has not provided any evidence showing police officers would have known any of the destroyed evidence had exculpatory value. Moreover, the parties had access to a copy of the 911 tape and crime scene photographs showing the interior of the cars and the property found inside of them. John-Drigo Aff. ¶ 30; Trial Tr. 176:7–178:1; 252:1–253:14. Further, petitioner has failed to show either that that the 911 tape was fraudulent or that prosecutors knew it was—let alone establish those facts by clear and convincing evidence. Petitioner's only evidence supporting his argument was that F.D.N.Y. "CAD" reports containing a rough transcription of Ms. White's 911 call contained minor discrepancies with the recording submitted into evidence, such as the precise start time. Ex. XI at 6, 31–32, 55; Pet. 64–65; Op. & Order 4. But these discrepancies are too inconsequential to support that the audio was altered. *See* Op. & Order 6–7 (finding no "initial basis to conclude that the tapes were altered"). Thus, the Second Department denied petitioner's destruction of evidence and fraud upon the court claims reasonably.

## III. Prosecutorial Misconduct

Petitioner raises five potential instances of prosecutorial misconduct, but none of them meets the standard to warrant habeas relief. "[O]n federal habeas review, the relevant standard [for prosecutorial misconduct] is the narrow one of due process, and not the broad exercise of supervisory power." *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014) (citations and quotation marks omitted). "[W]hile the State has a duty to refrain from improper methods calculated to produce a wrongful conviction, such methods will warrant habeas relief only if they so infected

the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (citations and quotation marks omitted). This inquiry takes into account the context of the entire proceedings. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

### A.  Bloodhound evidence

Petitioner claims prosecutors impermissibly elicited testimony that a bloodhound tracked his scent from the victim's car to a nearby bus stop and included this information in opening statement. Pet. 67–68. He argues this deprived him of due process and a fair trial because detectives Henn and Calabrese provided "opinion statements regarding the bloodhound's reaction" even though they "were not the bloodhound's handler and had no proficiency in the bloodhound's reliability to distinguish the human's scent." *Id.* at 68. The Second Department rejected this argument on direct appeal. *Chin*, 49 N.Y.S.3d at 517; Ex. VII at 62–66.

Petitioner's argument mischaracterizes the record. Detectives Henn and Calabrese reported that a dog from the K9 Unit went up to the victim's car and then led investigators to a bus stop. Trial Tr. 173:12–24, 239:19–240:1. They never testified that the bloodhound identified petitioner. Nor did they vouch for the bloodhound's reliability. Their testimony was offered only to show why police stopped searching for the shooter in the immediate vicinity. Opp'n 11.

The prosecutor did, however, draw the inference in her opening statement that the scent belonged to petitioner, Trial Tr. 16:10–14. To be entitled to relief on this ground, though, petitioner must show that "the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990) (citation and quotation marks omitted). Given the overwhelming evidence from Mr. Aarons and Ms. White identifying petitioner as the shooter, petitioner cannot show that the prosecutor's slip here was so prejudicial as to render his entire trial unfair. Therefore, the Second Department rejected this claim

reasonably.

### B.  Medical examiner's testimony and photographs

Petitioner claims testimony from Dr. Pasquale-Styles, the medical examiner, "was introduced into evidence by the prosecutor without any evidentiary foundation." Pet. 69. The Second Department rejected this argument on direct appeal. *Chin*, 49 N.Y.S.3d at 517; Ex. VII at 66–68. Dr. Pasquale-Styles had examined clothing found on the victim's body after her death. Trial Tr. 324:25. During her testimony, the prosecution also introduced photographs of that clothing. *Id.* at 326:23–328:5. Dr. Pasquale-Styles testified that she had found gunpowder residue on the victim's clothing, Trial Tr. 325:13–326:14, and the prosecutor had invoked that testimony in her summation, *Id.* at 410:8–15. But petitioner argues that the prosecution failed to establish "who recovered the clothing, where it was recovered, or who placed the shirt inside the evidence bag." Traverse 53.

Petitioner's claim fails because regardless of the foundation, this evidence's admission was not so prejudicial as to jeopardize the fairness of petitioner's trial. Dr. Pasquale-Styles's testimony only served to corroborate that the victim was shot several times at close range before she died. That fact was already well-established given Mr. Aarons's and Ms. White's eyewitness testimony that petitioner shot the victim several times at close range. Therefore, the Second Department rejected this claim reasonably.

### C.  Withholding of evidence

Petitioner claims the prosecution withheld various evidence until trial, including certain medical records of the victim, the copy of the 911 tape and Detective Henn's letter to the property clerk's office authorizing them to destroy the cars involved in the incident. Pet. 69–71. Petitioner also claims the prosecution indefinitely withheld pretrial statements made by Ms. Chinwe Ifeoma,

the victim's mother. *Id.* at 71, Ex. B at 3. He argues that withholding this evidence violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *Id.*[6]

To establish a *Brady* violation, petitioner must show that the prosecution withheld "favorable evidence [that] could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). Further, "[w]hen a habeas claim is based on belated disclosure of *Brady* information, rather than non-disclosure of such information, a petitioner is not entitled to reversal, even if the information is deemed material, 'unless he can show that the delayed disclosure caused him prejudice.'" *Lyon v. Senkowski*, 109 F. Supp. 2d 125, 138 (W.D.N.Y. 2000) (quoting *United States v. Diaz*, 922 F.2d 998, 1007 (2d Cir.), *cert. denied*, 500 U.S. 925 (1991)).

Petitioner has failed to demonstrate that any of this evidence would "undermine confidence" in his guilty verdict. *Kyles*, 514 U.S. at 435. Nor has he shown prejudice from belated disclosure of the evidence ultimately received at trial. Even taking all this evidence together, the totality would not outweigh the eyewitness testimony from Mr. Aarons and Ms. White that petitioner shot the victim from close range. Therefore, petitioner's *Brady* claim fails.

### D.  Eliciting improper testimony

Petitioner claims the prosecution improperly elicited the caliber of firearm used from the victim's eleven-year-old son and information regarding the victim's cell phone from Detective Henn. Pet. 71–72.

But petitioner has failed to show that either of these alleged errors "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*,

---

[6] Petitioner does not appear to have raised this precise argument on direct appeal or on review of his § 440.10 motion. However, I need not evaluate exhaustion or procedural bars because I have determined that this claim fails on the merits under any standard.

567 U.S. 37, 45 (2012) (citation and quotation marks omitted). The caliber of firearm used played a minimal role in connecting petitioner to the murder in light of Mr. Aarons's and Ms. White's eyewitness testimony that he shot the victim at close range, and the prosecutor's exchange with Detective Henn on redirect concerning the victim's cell phone had no effect on the outcome. Therefore, petitioner has failed to establish prosecutorial misconduct in eliciting improper testimony.

### E.  Other comments on summation

Petitioner claims the prosecution made improper inflammatory comments in summation, such as calling him a "true killer" and vouching for certain witnesses' credibility. Pet. 72–73. But again, petitioner has failed to show that these comments were so prejudicial as to jeopardize his guilty verdict in light of the strength of eyewitness testimony. *See, e.g.*, *Darden v. Wainwright*, 477 U.S. 168, 180–83 (1986). Therefore, petitioner has failed to establish prosecutorial misconduct in making inflammatory statements on summation.

### IV.    Right to Conflict-Free Representation and Right to Decide the Objectives of His Own Defense

Petitioner challenges the trial court's rejection of his requests for substitute trial counsel after trial counsel visited him for the first time twenty days before trial, "defied [his] instruction to file a notice to advance an affirmative alibi defense," and changed investigators due to a conflict. Pet. 13, 59–61. The Second Department found these claims meritless on direct appeal. *Chin*, 49 N.Y.S.3d at 517; Ex. VII at 12–23.

Trial court decisions on substitution of counsel are discretionary. *United States v. Hsu*, 669 F.3d 112, 122 (2d Cir. 2012). Applying an abuse of discretion standard, a reviewing court considers three factors: "(1) whether defendant made a timely motion requesting new counsel; (2) whether the trial court adequately inquired into the matter; and (3) whether the conflict between the

defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001) (citation and quotation marks omitted).

Here, while petitioner's motion was timely, the trial court denied it because petitioner already had cycled through two previous lawyers and was delaying the trial. Sept. 9, 2009 Pre-Trial Tr. 2:16–18, 5:11–15. He asserted only vague communication issues and did not raise the timing of trial counsel's visit in his original motion. Mot. Substitute Trial Counsel, Pet. Exs. 57, ECF No. 1-1 ("Phone calls made to [Mr. Smallman's] office are never answered personally and all messages ha[ve] to be left on the answering machine, letters sent to his office are never answered and personal appointment[s] he has made to see me are never fulfilled."). Moreover, the original investigator informed trial counsel of his conflict in a timely manner, and his substitution did not prejudice petitioner. Sept. 9, 2009 Pre-Trial Tr. 3:17–4:18. Trial counsel's failure to pursue an alibi defense also did not reflect a total breakdown in communication on the grounds that petitioner appeared not to have raised the issue in a timely manner and tacitly admitted that he could not substantiate such a defense. *Id.* at 4:25–5:14. Further, the court inquired into all of these issues on the record. *Id.* at 2:16–5:14. Thus, I cannot determine that the trial court unreasonably applied federal law in denying petitioner's request for substitute counsel.

Nor can I conclude that trial counsel's failure to pursue an alibi defense violated petitioner's right to determine the objectives of his defense. The decision not to pursue an alibi defense is a "strategic choice" that is "virtually unchallengeable" if adequately investigated or if "reasonable professional judgments support the limitations on investigation." *Velazquez v. Poole*, 614 F. Supp. 2d 284, 338 (E.D.N.Y. 2007) (citations omitted). Petitioner has failed to present any facts that support the existence of an alibi defense. Therefore, trial counsel's failure to present it

did not interfere with petitioner's right to decide the objectives of his own defense.

**V.    Right to Be Present**

Petitioner claims that his right to be present at his trial was violated when the trial judge, prosecutor, and trial counsel met outside his presence to discuss redactions to the victim's death certificate and stipulate to the document's admission. Pet. 66. The Second Department rejected this argument as meritless on direct appeal. *Chin*, 49 N.Y.S.3d at 517; Ex. VII at 73–76.

"[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). But petitioner has not shown that the challenged exchange was material. During the sidebar, both parties agreed to redact portions of the death certificate reflecting that the victim died of "homicide" and was "shot by [an]other person." Trial Tr. 332:2–5. Petitioner claims the death certificate still indicated that the victim's "death was caused by a firearm." Pet. 66. I assume petitioner argues that he would have sought to redact that fact had he been present. But that issue was not in dispute given that multiple eyewitnesses testified to observing the victim being shot at close range and that a medical examiner testified that the victim's clothing reflected gunshot wounds.[7] By the same token, any error would have been harmless. *See Sanchez v. Duncan*, 282 F.3d 78, 82–83 (2d Cir. 2002) (finding harmless error where petitioner alleged violation of right to be present for voir dire sidebars). Therefore, the Second Department reasonably rejected this claim.

**VI.    Response to Jury Note**

Petitioner claims the trial court failed to respond to jury note 3A requesting the names of

---

[7] Petitioner also argues that the redacted death certificate was admitted without foundation, Pet. 66, but trial counsel stipulated to its admission, Trial Tr. 331:19–21.

the witnesses who met with the prosecutor before trial, in violation of his right to due process and a fair trial. Pet. 80. The Second Department rejected this argument as meritless on direct appeal. *Chin*, 49 N.Y.S.3d at 517; Ex. VII at 57–60. "A readback of portions of the trial record is a matter committed to the sound exercise of a trial court's discretion." *United States v. Young*, 140 F.3d 453, 456 (2d Cir. 1998) (citations omitted). Where a jury note is "ambiguous," giving it a "reasonable interpretation" and "asking if that was what the jury wished to hear" is "well within the bounds of discretion." *United States v. McElroy*, 910 F.2d 1016, 1026 (2d Cir. 1990).

Here, the trial judge responded to note 3A by seeking clarification. Trial Tr. 440:4–11. The parties had all agreed that the note was "unclear" and "suggested that [the court] ask the jury for clarification." *Id.* at 437:20–21. The jury then reached a verdict before clarifying its request in note 3A. John-Drigo Aff. ¶ 40. The judge did not even attempt to "reasonabl[y] interpret[]" the note, *McElroy*, 910 F.2d at 1026, but rather sought clarification from the jury itself, which ultimately decided it did not need the testimony after all. Such a conservative response could not have prejudiced petitioner. Therefore, the Second Department reasonably rejected this claim.

## VII.   Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim under the Sixth Amendment, a petitioner "must show, not only that his counsel's representation was fundamentally defective, but also that, but for the counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations and quotation marks omitted). In other words, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.

The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Substantively, "[f]ailure to make a meritless argument does not amount to ineffective assistance." *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999). "Nor does an action or omission that might be considered sound trial strategy." *Id.* (citation and quotation marks omitted).

### A. Trial counsel

Petitioner argues that trial counsel, Mr. Smallman, erred in several ways, including failing to file a motion to suppress evidence obtained through searching the gold Lexus, Pet. 67, failing to seek an adverse inference charge for the police's willful destruction of the vehicles involved in the incident, Ex. VII at 29, failing to object to the bloodhound testimony, Ex. VII at 65–66, failing to object to the medical examiner's testimony, Ex. VII at 67, failing to obtain cell phone records to support an alibi defense, Ex. XI at 30, and failing to investigate the 911 tape, Ex. XI at 34–38. The Second Department rejected all of petitioner's ineffective assistance claims, both on direct appeal and in reviewing the trial court's decision on petitioner's § 440.10 motion. *Chin*, 49 N.Y.S.3d at 517 ("The record as a whole demonstrates that the defendant received effective assistance of counsel under both federal and state constitutional standards . . . ."); *Chin*, 48 N.Y.S.3d at 617 ("Contrary to the defendant's contention, the court could determine from the parties' submissions that the defendant was not deprived of the effective assistance of counsel.").

Petitioner has not provided any reason why the state court's determinations were so unreasonable as to overcome the "doubly" deferential standard applicable here. As to a potential suppression motion, petitioner has not supported his contention that police searched the gold Lexus without a warrant beyond merely asserting so. As to the rest of his grounds, petitioner raised these substantive arguments in various post-trial proceedings, and not one has succeeded. Therefore,

they cannot support a finding that the state court unreasonably rejected his ineffective assistance of trial counsel claims. In any event, petitioner cannot show he suffered prejudice from any of trial counsel's actions given the overwhelming evidence of guilt in this case.

### B. Sentencing counsel

Petitioner argues that sentencing counsel, Mr. Cohen, labored under a conflict of interest when he refused to file a motion to set aside the verdict under N.Y.C.P.L. § 330.30 because trial counsel was "a good attorney and his friend." Pet. 73. The state court rejected this argument in reviewing the trial court's decision on petitioner's § 440.10 motion. *Chin*, 48 N.Y.S.3d at 617; Ex XI at 53–54.

I cannot find that this was an unreasonable application of federal law. The Second Circuit has upheld rejecting an ineffective assistance of counsel claim where a lawyer refused to adopt a defendant's meritless motion to withdraw his guilty plea due to a conflict. *See Hines v. Miller*, 318 F.3d 157, 163 (2d Cir. 2003); *see also Redd v. Woughter*, No. 09-CV-9819 (PAE), 2012 WL 2864514, at *7–8 (S.D.N.Y. July 12, 2012). Similarly, at least one district court in this circuit has denied habeas relief where a lawyer advised his client not to file a meritless *pro se* § 330.30 motion. *Mosley v. Rich*, No. 18-CV-428 (JKS), 2020 WL 3128530, at *11 (N.D.N.Y. June 12, 2020). It follows that habeas relief is inappropriate where a lawyer declines to adopt a meritless § 330.30 motion, even if that decision stems from a conflict. Here, the trial court summarily denied petitioner's *pro se* § 330.30 motion, finding that all his arguments lacked merit. *See* Opp'n, Ex. III (attached as Ex. II). Therefore, even if sentencing counsel had been conflicted, it was reasonable for the state court to find that he provided effective assistance of counsel because petitioner's § 330.10 motion lacked merit.

### C. Appellate counsel

Petitioner claims appellate counsel, Ms. Pervukhin, failed to investigate the entire record on appeal and "raised two unpreserved and frivolous issues over issues that were preserved, obviously meritorious, and patently stronger." Pet. 75. Petitioner also claims appellate counsel had a conflict of interest in failing to "settle the record on appeal" because it lacked the minutes from a September 9, 2009 pretrial conference. *Id.* at 77–78. The Second Department rejected these arguments in reviewing petitioner's first application for a writ of error coram nobis. *Chin*, 77 N.Y.S.3d at 643 ("The appellant has failed to establish that he was denied the effective assistance of appellate counsel (*see Jones v Barnes*, 463 US 745 [1983]; *People v Stultz*, 2 NY3d 277 [2004]).").

"*Strickland*'s two-prong test applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right." *Aparicio*, 269 F.3d at 95 (citing *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985)). It is true that the Second Department found the arguments petitioner's appellate counsel raised on direct appeal to be mostly unpreserved. *Chin*, 49 N.Y.S.3d at 517. But the arguments petitioner presented in his *pro se* supplemental brief fared no better. The Second Department rejected them all as meritless, *id.*, and I have determined that it did so reasonably, *supra* Discussion I–VII. Appellate counsel need not "press nonfrivolous points requested by [a] client[] if counsel, as a matter of professional judgment, decides not to present those points." *Jones*, 463 U.S. at 751. For the same reasons, I cannot conclude that the Second Department's denials of petitioner's requests for substitution of appellate counsel were unreasonable applications of federal law. Pet. 79–80. Therefore, the Second Department reasonably rejected these arguments.

Petitioner also has failed to show that he suffered prejudice from the appellate record

lacking the September 9, 2009 minutes. As the government notes, petitioner cited these minutes in his *pro se* supplemental brief on direct appeal. Ex. VII at 14–15. Moreover, petitioner's claim based on these minutes that the trial court deprived him of his right to conflict-free representation in denying his motion to substitute Mr. Smallman as trial counsel would have failed in any event. *See supra* Discussion IV. Accordingly, petitioner's claim against the Second Department for failing to include the full trial record on appeal also fails. Pet. 79. *See Santiago v. Coughlin*, 107 F.3d 4, 4 (2d Cir. 1997) ("[T]o prevail on his habeas claim that the Appellate Division infringed upon his right to a fair appeal, [a petitioner] must show prejudice resulting from the missing or incomplete transcript." (citations and quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, I deny the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. I decline to issue a certificate of appealability because petitioner has not made a substantial showing of the denial of a constitutional right. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.


SO ORDERED.




_____/s/_____
Allyne R. Ross
United States District Judge


Dated:          August 3, 2021
                Brooklyn, New York

24