UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WAYNE CHIN,

                Petitioner,

-against-

JOSEPH NOETH,

                Respondent.

NOTICE OF MOTION

19-CV-02729 (ARR)

ECF Case

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 09 2022 ★
BROOKLYN OFFICE

RECEIVED
MAR 09 2022
PRO SE OFFICE

*Rec. in p drive 3/10/22

PLEASE TAKE NOTICE that upon the pleadings served in this action, the accompanying memorandum of law, the attached appendix, and all prior proceedings, Wayne Chin, pro se, will move this Court at the United States Courthouse for the Eastern District of New York, located at 225 Cadman Plaza East, Brooklyn, New York 11201, as soon as Petitioner may be heard for an Order pursuant to Rule 60(b)(1), (4), & (6) of the Federal Rules of Civil Procedure, granting the reopening of the petitioner's 28 U.S.C. §2254 habeas corpus petition on the basis that the Court's combined decisions, orders and final judgment dated, August 3rd, 2021, failed to comport with fundamental due process law and constitutes a blatant miscarriage of justice. Petitioner respectfully request such, and any further relief deems just and proper.

Dated: March 6th, 2022
        Ossining, New York 10562-5442

                                              Respectfully submitted,

                                              Mr. Wayne Chin, Pro-Se
                                              Din: # 09A-6287
                                        Sing Sing Correctional Facility
                                              354 Hunter Street
                                            Ossining, New York 10562

Eric Gonzalez, Esq.
District Attorney, Esq.
Kings County
Criminal Appeals Unit
350 Jay Street
Brooklyn, New York 11201

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WAYNE CHIN,

               Petitioner,

-against-

JOSEPH NOETH,

               Respondent.

MEMORANDUM OF LAW

19-CV-02729 (ARR)

EFC CASE



RECEIVED MAR 09 2022 PRO SE OFFICE

PLELIMINARY STATEMENT

WAYNE CHIN, Petitioner pro se, brings this motion pursuant to Federal Rules of Civil Procedure 60(b)(1), (4), and (6), to reopen the 28 U.S.C.§ 2254 habeas corpus proceeding and to set aside the judgment rendered by this Court on August 3, 2021, on the grounds of manifest injustice cause by this Court's failure to accord the petitioner due process and equal protection of law under the United States Constitution has interpreted by the United States Supreme Court under the following authorities:

1.     The Fifth and Sixth Amendments of the United States Constitution and New York's laws guarantees a criminal defendant the exclusive and personal right to make his or her own defense. See: _Faretta v. California_, 422 US 806, 819 (1975)(original citation and quotation marks omitted); _People v. DeGina_, 72 NY2d 768, 776 (1988); _People v. Clark_, 129 AD3d 1, 11-12 (2 Dept. 2015); _People v. Morton_, 173 AD2d 1081, 1085 (3 Dept. 1991)("[C]ounsel has no authority to pursue any defense other than the one authorized by defendant").

2.     In _McCoy v. Louisiana_, the Supreme Court reiterated that the Sixth Amendment "right to defend is personal" and a defendant's choice in exercising that right 'must be honored out of that respect for the individual, which is the lifeblood of the law." 138 S.Ct. @ 1507 (quoting _Faretta_, 422 US @ 834); _Gannett Co. v. DePasquale_, 443 US 368, 382, n.10 (1979)("the Sixth

1

Amendment contemplates a norm in which the accused, and not his lawyer is master of his own defense"); *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017)("the defendant's right to conduct his own defense,... is based on the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty")

3. Consonant with those precepts, the State argued in *Petrovich v. Leonardo*, 229 F.2d 384 (2 Cir. 2000), that: "because the right to defend is given directly to the accused it is important to remember that while defense counsel serves as an advocate for the client, it is the client who is master of his...own defense, ...and that respect for individual autonomy requires that he be allowed to go to jail under his own banner if he so desires and if he makes the choice with eyes open." See: appendix A @ pgs. 18-19.

4. Here, in spite of the resounding authorities enunciated in *Faretta, Weaver, McCoy*, and *Degina*, *People v. Clark*, and *Morton, supra*, this court's transmuted the petitioner's claim violation of his Sixth Amendment secured autonomy into one of ineffective assistance of counsel (Court's decision @ 18-19) sidesteps the thrust of the petitioner's legal argument and assumes away his constitutional right to make fundamental choices regarding his life and liberty.

5. This Court's arbitrarily abused its discretion in denying the petitioner due process and equal protection of law, by stripping the personal character that the Constitution demands, and like the State's trial court, allowed defense counsel to contradict and override the essence of the appellant's final and informed decision regarding the objective to maintain his own actual innocence (*alibi*) defense. Thus, making defense counsel the "master" rather than the "assistance." (Compare) *Martinez v. Court of Appeal of Cal.*, 528 US 152, 165 (2000)(Scalia, J., concurring in judgment)("Our system of laws generally presumes that a criminal defendant, after

2

being fully informed, knows his own best interests, and does not need them dictated by the State")

## STATEMENT OF FACTS

6. For the sake of brevity, the Petitioner assumes that all parties are familiar with the facts and proceedings of the case held heretofore. Petitioner does not reprint the factual predicates, but incorporates them by reference herein.

## STANDARD OF REVIEW

7. Rule 60(b) of the Federal Rules of Civil Procedure provides in relevant part, that a district court may relieve a party form final judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, (whether therefore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void, the court lack of jurisdiction, or acted in a manner inconsistent with due process of law; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; (6) any other reason justifying relief from the operation of the judgment. In addition, the rule further provides that any motion "shall be made within reasonable time," and "for reasons (1), (2), and (3) not more than one year after the judgment order or proceeding was entered or taken. Fed. R. Civ. P., 60(b).

3

8. Rule 60(b)(1) is available for the district court to correct legal errors by the court (*United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2 Cir. 2009), or the district court's own mistake of facts. *Niederland v. Chase*, F.Appx. 10, 11 (2 Cir. 2011)

9. Petitioner asserts that there is substance to his contention that this Court deprived him of due process and equal protection of law, which fits comfortably within Rule 60(b)(1) concept that this Court arbitrarily ignored the Constitution Mandate established by United States Supreme Court's laws to used the wrong standard of review to deny the petitioner equitable habeas corpus relief.

10. Rule 60(b)(4) applies only "in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Fund, Inc. v. Espinosa*, 559 US 260, 270-71. As the Second Circuit has explained, under Rule 60(b)(4), a judgment is void only if the court that rendered it lacked jurisdiction or subject matter or if the parties, or if it acted in a manner inconsistent with due process *Grace v. Bank Leumi Trust Co. of New York*, 443 F.3d 180, 193 (2 Cir. 2006)

11. Petitioner asserts that there is substance to his contention of being deprived constitutional due process and equal protection of law on collateral habeas review which fits comfortably within Rule 60(b)(4) concept of the judgment being void because this Court's acted in a manner inconsistent with due process, when it executed a racially bias and arbitrary adjudication of the merit issue and ignored the constitutional mandate of the United States Supreme Court, and New York Court's precedents.

12. Applying Rule 60(b)(4) principle to this case, there can be little doubt that due process guarantees fair and just procedures in the adjudication of constitutional rights. *Case v.*

4

*Nebraska*, 381 US 336, 344 (1965)(addressing the absence of fair post-conviction procedures for review of Sixth Amendment claim); *Daniels v. United States*, 532 US 374, 386-87 (2001)( reflecting on the role that due process might play in ensuring that a claim is adjudicated fully and fairly "somewhere"). In this case, petitioner already shows by operation of the laws enunciated in *McCoy,Weaver*, *Faretta*, *Degina*, and *Clark*, this Court's deprivation of petitioner's right to due process and equal protection under the law.

13. Petitioner asserts that there is substance to his contention of undue hardship which fits comfortably within Rule 60(b)(6) concept for "any other reasons that justify relief." And the absence of a full, fair, and substantive review of the petitioner's case, would cause a fundamental miscarriage of justice to stand without proper judicial review in accordance with due process and equal protection of law.

## ARGUMENT

THIS COURT ABUSED ITS DISCRETION WHEN IT IGNORED THE CONSTITUTIONAL MANDATE OF McCOY V. LOUSIANA AND USED THE FRAMEWORK OF INEFFECTIVE ASSISTANCE TO ADJUDICATE THE VIOLATION OF PETITIONER'S SIXTH AMENDMENT SECURED AUTONOMY

14. Prior to the Supreme Court's decision in *McCoy*, disputes over the scope of a defendant's autonomy generally arise from a conflict between a defendant and his attorney, which means these issues often came before courts as claims of ineffective assistance of counsel. Thus, courts sometimes treat the defendant's right to make fundamental decision's as a question of what does and does not constitute effective assistance. See: e.g., *Jones*, 463 US @ 749-50 (failure of appellant counsel to press the client's desired non frivolous ground for appeal was not ineffective assistance); See generally, *Wayne R.*

5

*LaFave*, et al., 3 Criminal Procedure § 11.6(a) (4th ed. 1992)( [A] claim of ineffective assistance..., is probably the most common avenue for presenting [the] issue [of client control] ..."). But conceptually, ineffective assistance jurisprudence is an inapt framework for understanding defendant autonomy and the United States Supreme Court settled that question when it held:

> "A violation of the client's right to maintain his ...defense of innocence implicates the client's autonomy (not counsel's effectiveness) and is complete once counsel usurps control of an issue within the defendant's sole prerogative," (Id., 138 S. Ct. @ 1511), ... "error of this kind is structural and not subject to harmless error review because it 'blocks the defendant's right to make fundamental choices about his own defense"...Id., 138 S. Ct. @ 1505

15. Despite this constitutional mandate established that a violation of the petitioner's Sixth Amendment secured autonomy, does not implicate defense counsel's competence, but contingent an accused autonomy to control the objectives of his own defense; this Court ruled :

> "[The] decision not to pursue an alibi defense, is a strategic choice that is virtually unchallengeable if adequately investigated, or if 'reasonable professional judgment support the limitations on the investigation." (citing *Velazquez v. Poole*, 614 F. Supp. 2d @ 338).

16. The *Velazquez's* Court focused on counsel's effectiveness, not the Sixth Amendment secured autonomy.[1] Here, in contrast, Petitioner's Sixth Amendment secured autonomy is the issue, and has the Supreme Court emphasized in *McCoy*, an accused informed and final decision to his counsel to advance an actual innocence defense, "are not strategic choices about how to achieve the client's objectives, they are choices about what the

---

[1] By using the framework for ineffective assistance of counsel to adjudicate a violation of Sixth Amendment autonomy, this court seems to be proposing that inspire of Petitioner's constitutional right to chart his own defense, trial counsel could override the Petitioner's informed decision, and impose an unwelcome defense upon the petitioner, against his will. However, the constitutional mandate from the United States Supreme Court does not support such analogy.

6

client's objectives in fact are." *Id.*, 138 S. Ct. @ 1508. McCoy court exemplified that an attorney cannot override an accused's informed decision and imposes an unwelcome defense upon an accused against his will or clear objection. See: also, *Frierson*, 705 P. 2d @ 403-04 (recognizing that "a defendant chooses to exercise a personal right…over counsel's contrary advice [,]…the attorney's obligation is simply to provide the best representation that he can under the circumstances." (Emphasis in the original); 1 Restatement [third] of the law Governing Lawyers §§ 23 CMT. C, at 186 (2002)("however, a lawyer has no right to remain in a representation and insist, contrary to the client's instruction, that the client comply with the lawyer's view of the client's intended and lawful course of action")

17. The logic underlying these principles of a client's instruction control and not counsel's perceived strategy was addressed in *Petrovich v. Leonardo*, 229 F.3d 384, 386-87 (2 Cir.2000) where the client's instruction to his attorney not to present an extreme emotional disturbance defense, was akin to other fundamental trial decisions, such as the decision to plead to a lesser charge or to assert a plea of insanity…which are reserved to the client. If that analogy is sound, a court must accept a defendant's well in such matter as to assert one's own defense. [citations omitted], cert. denied 532 US 981 (2001).

18. To further illustrate the point, in *People v. Clark*, supra, the defendant's insisted that his attorney advance a defense based solely on misidentification and affirmatively rejected and alternative justification offered by his attorney.

19. On appeal, Clark argued that is conviction should be reversed because his attorney was in charge of strategy and should have presented the justification defense. The Appellate Division rejected his argument and held that counsel could not overrule *Clark's* final

7

decision for a misidentification because it involved matters that was "personal and fundamental" to him…, and "did not implicate a matter of trial strategy or tactics." Id., 129 AD 3d @ 11-12. Just as the *Clark's* court emphasized, so was an alibi defense personal and fundamental to the petitioner, and did not implicate a matter of trial strategy or tactics. Petitioner is entitled to equal protection of law, which this court deprived the petitioner.

20. *United States v. Read*, 918 F.3d 712 (9th Cir. 2019), is not the contrary, where the Ninth Circuit held that, in "light of McCoy, counsel cannot impose an insanity defense on a non-consenting defendant." Id., 918 F. 3d @ 720. *Read* was charged with assault and claimed he was possessed by demons and insisted to be tried on that strategic defense. Instead, *Read's* trial attorney presented an insanity defense over *Read's* objections. The Court found structural error implicating Read's autonomy to determine the objectives of his own defense. *Id*.

21. Furthermore, most of these case draw primarily form *Faretta's* emphasis on the personal character of the Sixth Amendment right to make a defense which never focused on the nature of the defense the defendant sought to assert. For example, in *Johnson v. State*, 17 P.3d 1008, 1013, (Nev. 2001), a murder case, counsel present both a claim of self-defense and, over *Johnson's* objection, an insanity defense. On appeal, *Johnson* contended counsel undermined his self-defense claim by interposing an insanity defense. Rather than addressing this contention, The Supreme Court of Nevada held that trial counsel's presentation of an insanity defense against *Johnson's* expressed objections was per se improper. *Id.* That error was structural error not subject to harmless analysis. *Id.*, @ 1013 & n.6.

8

22. By imposing an unwelcome "**quality of police investigation defense**" upon the petitioner, against his will, trial counsel, Phillip Smallman became an arm of the State, and took from the petitioner before trial, the very thing the prosecutor sought to take by conviction. Therefore, a fundamental miscarriage of justice occurred in this Court as well as the state courts. See: e.g., *United States v. Marble*, 940 F.2d 1543, 1546 (D.C.Cir.1991)("Unless the accused has acquiesced, the defense presented is not the defense guaranteed him by the Constitution, for in a very real sense it is not his defense")(quoting *Faretta*, 422 US @ 821).

Petitioner respectfully demand:

 (A) . A declaration that the final judgment is unconstitutional on its face as applied to petitioner on habeas review;

 (B) . A preliminary and permanent decision of petitioner's habeas petition vacating final judgment is warranted and;

 (C) . De novo review should this Court's review Petitioner's Rule 60(b) motion failed to be impartial and fair in line with the Constitutional Mandate, a manifest injustice would continue to be perpetrated upon the petitioner by this Court;

 (D) . Any additional further relief this Court deems just and proper.

WHEREFORE, the petitioner prays for vacatur of the final judgment.

9

Dated: March 6th, 2022
       Ossining, New York 10562-5442

Respectfully submitted,

Wayne Chin
Din: O9-A-6287
Petitioner pro se
Sing Sing Corr. Fac.
354 Hunter Street
Ossining, New York 10562

TO SERVICE:
Eric Gonzalez, Esq.
District Attorney, Kings County
Criminal Appeals Unit
350 Jay Street
Brooklyn, N.Y. 11201

10

# APPENDIX A

# APPENDIX A

# APPENDIX A

# APPENDIX A

Case 1:19-cv-02729-ARR   Document 45   Filed 03/09/22   Page 13 of 19 PageID #: 3032

Oliver PETROVICH, Petitioner-Appellant, v. NEW YORK..., 2000 WL 33977772...

Accordingly, even a petitioner who successfully interposes that defense still faces substantial incarceration and the stigma of a criminal conviction

Because in all cases it is the petitioner, rather than his attorney, who must decide whether to enter a guilty plea -- whether it be to the charged offense or to some lesser *27 uncharged offense -- it should also be the petitioner's prerogative to reject his attorney's advice to present the jury with a basis for convicting him on a lesser uncharged crime Thus, petitioner's Sixth Amendment right to counsel was not violated when the state court granted petitioner's request that the jury not be instructed on the affirmative defense of extreme emotional disturbance

*28 **ARGUMENT**

**THE *TEAGUE* DOCTRINE PRECLUDES THE GRANTING OF RELIEF TO PETITIONER IN ANY EVENT, AS BETWEEN PETITIONER AND DEFENSE COUNSEL, IT WAS ULTIMATELY FOR PETITIONER TO DECIDE WHETHER THE JURY SHOULD BE INSTRUCTED ON THE AFFIRMATIVE DEFENSE OF EXTREME EMOTIONAL DISTURBANCE ACCORDINGLY, PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL WHEN THE COURT, ACTING AT PETITIONER'S SPECIFIC REQUEST, DID NOT CHARGE THE JURY ON EXTREME EMOTIONAL *DISTURBANCE (answering petitioner's brief).***

Petitioner claims that his Sixth Amendment right to counsel was violated when the trial court permitted him to chart the course of his own defense by allowing him to reject defense counsel's advice that the jury be instructed on the affirmative defense of extreme emotional disturbance [Penal Law § 125 25(1)(a)][4] Preliminarily, it must be noted that because a ruling interpreting the Constitution as requiring that the decision to submit the affirmative defense be made only by defense counsel would involve the announcement of a "new rule" under *Teague v Lane,* 489 U S 288 (1989), this Court is precluded from granting petitioner any relief on his claim[5] In any event, it is undisputed by the parties that *29 throughout petitioner's trial, his attorney provided vigorous and effective representation[6] Defending his client against two counts of second-degree murder, counsel served pretrial notice of intent to interpose an insanity defense, and thereafter presented that defense at trial forcefully and competently through the testimony of two expert witnesses Nevertheless, petitioner's application for a writ of habeas corpus is predicated on his claim, which he also raised in the Supreme Court of the State of New York, Appellate Division, Second Department, and the New York State Court of Appeals, that his right to counsel was violated when the trial court permitted him to chart the course of his own defense He claims that he should not have been permitted to reject defense counsel's advice that the jury be instructed about extreme emotional disturbance -- an affirmative defense that, if accepted by the jury in lieu of the insanity defense which was presented, would have provided a basis for convicting petitioner of the lesser uncharged crime of manslaughter in the first degree According to petitioner, the trial court was required to defer to counsel's wishes rather than petitioner's, or, at a minimum, "the trial court should have conducted an inquiry into whether petitioner was 'knowingly and intelligently' waiving the right to counsel" (*see* petitioner's brief, pp 8-9) Petitioner's argument is fallacious

Petitioner's claim is predicated on an erroneous premise Underlying petitioner's argument is the belief that the decision whether to instruct the jury on extreme emotional *30 disturbance was "a matter of strategy to be determined by counsel" (*see* petitioner's New York State Court of Appeals brief at page 21) Proceeding from this premise, petitioner concludes that in being permitted to override counsel on this issue he was essentially permitted to proceed *pro se* to that limited extent Petitioner's underlying premise is wrong, and therefore so is the conclusion he draws from it Contrary to petitioner's belief, just as it is always the petitioner's decision whether to plead guilty to a charge, it is his decision to reject defense counsel's advice to present the jury with a basis for convicting him on that charge Thus, as between petitioner and defense counsel, it was ultimately for petitioner to decide whether the jury should be instructed on extreme emotional disturbance And, because petitioner was performing the role of the accused rather than that of the lawyer in making this decision, his conduct was not equivalent to supplanting counsel or proceeding *pro se* Hence, as the District Court and the New York Court of Appeals correctly concluded, no formal inquiry was necessary, and petitioner was not deprived of his right to counsel when the trial court honored his personal request not to charge the jury on extreme emotional disturbance (Appendix, pp 10-11, *People v Petrovich,* 87 N Y 2d 961 [1996]).

Case 1:19-cv-02729-ARR Document 45 Filed 03/09/22 Page 14 of 19 PageID #: 3033

Oliver PETROVICH, Petitioner-Appellant, v. NEW YORK..., 2000 WL 33977772...

### A As Between Petitioner and Defense Counsel, It Was Ultimately For Petitioner To Decide Whether The Jury Should Be Instructed On Extreme Emotional *Disturbance*

Prior to summations, defense counsel advised the court that he and petitioner were in disagreement over whether the affirmative defense of extreme emotional disturbance [New York Penal Law § 125 25(1)(a)] should be included in the court's jury charge Defense counsel requested that the court submit the affirmative defense to the jury, thereby enabling it to find petitioner guilty of manslaughter in the first degree [New York Penal Law § 125 20(2)] However, "in no uncertain terms," petitioner opposed the submission of the affirmative defense, because he believed that the jury would "compromise and come in with that verdict, thereby ignoring [his insanity defense]" *31 [1271] -- a defense that, if accepted by the jury, would completely exonerate him of criminal responsibility for the killings and free him from serving any prison sentence whatsoever

Remarkably, petitioner contended on his direct appeal in the state courts and now contends in this Court that the trial court erred when it acceded to his wishes and permitted him to chart the course of his own defense He asserts that his constitutional right to counsel required the trial court to treat defense counsel's request that the jury be instructed on extreme emotional disturbance "as one of trial strategy, which is an area generally considered to be under counsel's exclusive control" (*see* petitioner's brief, pp 7-8) This claim profoundly misapprehends the nature of the right to the assistance of counsel

The Sixth Amendment does not provide merely that a defense shall be made for the accused, it grants to the accused personally the right to make his defense It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor .. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails

*Farretta v. California*, 422 U.S. 806, 819-20 (1975) Because the right to defend is given directly to the accused, it "is important to remember that while defense counsel serves as an advocate for the client, it is the client who is master of his or her own defense" [*United States v Teague*, 953 F 2d 1525, 1533 (11th Cir), *cert denied*, 506 U S 842, (1992)], and that "respect for individual autonomy requires that he be allowed to go to jail under his own banner if he so desires and if he makes the choice with eyes open " *United States ex rel Maldonado v Denno*, 348 F 2d 12, 15 (2d Cir 1965)

Thus, the right to the assistance of counsel is not intended to establish counsel's dominance while representing the accused Instead, the Sixth Amendment "speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant " *32 *Farretta v California*, 422 U S. at 820 Indeed, as this Court has recognized, "[d]efense counsel's task in tempering his or her judgment as a trained advocate with his or her responsibilities as counsel is a delicate one" *Dean v Superintendent, Clinton Correctional Facility*, 93 F 3d 58, 62, (2d Cir ), *cert denied*, 519 U.S 1129 (1996) Accordingly, even those "strategic and tactical decisions" that are within "the exclusive province of the lawyer" are to be made only "after consultation with the client " ABA Standards For Criminal Justice, The Defense Function, Standard 4-5 2

Additionally, and, insofar as the instant case is concerned, even more significantly, there is a category of fundamental decisions that have such significant ramifications for the petitioner that they are for the petitioner personally, rather than the lawyer, to make This point is by now too firmly established in the law to be contested by petitioner Indeed, the Supreme Court has held that an

accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury trial, testify in his or her own behalf, or take an appeal

*Jones v Barnes*, 463 U.S 745, 751 (1983) Accordingly, this Court has stated that "criminal defendants at trial 'possess essentially two categories of constitutional rights those which are waivable by defense counsel on the defendant's behalf, and those which are considered 'fundamental' and personal to the defendant, waivable only by defendant " *Brown v Artuz*, 124 F 3d 73, 77 (2d Cir ), *cert denied*, 522 U S 1128 (1998)

The decision at issue in this case -- whether to instruct the jury on extreme emotional disturbance, and thereby present the jury with a basis for convicting petitioner of a lesser uncharged crime -- may readily be equated with the decision whether to plead guilty to a lesser charge, which, as already noted, is so clearly a decision within the exclusive purview *33 of the petitioner himself Thus, it is a fundamental decision to be made by the petitioner personally rather than the lawyer

· Case 1:19-cv-02729-ARR   Document 45   Filed 03/09/22   Page 15 of 19 PageID #: 3034

Oliver PETROVICH, Petitioner-Appellant, v. NEW YORK..., 2000 WL 33977772...

Unlike a petitioner who successfully interposes other types of defenses and affirmative defenses, such as justification [New York Penal Law Article 35], duress [New York Penal Law § 40.00], entrapment [New York Penal Law § 40 05], renunciation [New York Penal Law § 40 10], and lack of criminal responsibility by reason of mental disease or defect [New York Penal Law § 40 15], a petitioner who successfully interposes the affirmative defense of extreme emotional disturbance does not avoid criminal responsibility for his acts That is because the extreme emotional disturbance defense "is not exculpatory but mitigating and ... entail[s] charging a lesser offense " *People v Harris*, 109 A D 2d 351, 366 (2d Dept 1985) Thus, even a petitioner who successfully interposes that defense still faces substantial incarceration and the stigma of a criminal conviction

Because in all cases it is the petitioner, rather than his attorney, who must decide whether to enter a guilty plea -- whether it be to the charged offense or to some lesser uncharged offense -- it should also be the petitioner's prerogative to reject his attorney's advice to present the jury with a basis for convicting him on a lesser uncharged offense Indeed, a lawyer acts in clear derogation of his ethical duty of zealous representation (*see* Code of Professional Responsibility, DR 7-101 [A] [1], *Yalango v Popp*, 84 N Y 2d 601, 609-610 [1994]["attorneys in this state are not only encouraged but are expected to zealously represent all clients"]) when, without the client's consent, he exposes the client to a criminal conviction and potential loss of liberty for an uncharged crime It is therefore no surprise that the American Bar Association and courts throughout the country that have considered the issue agree that the decision about which lesser included offenses should be submitted to the jury
is so important as well as so similar to the defendant's decision about the charges to which to plead, the defendant should be the one to decide whether to seek admission to the jury of lesser *34 included offenses *For instance, in a murder prosecution, the defendant rather than the defense attorney, should determine whether the court should be asked to submit to the jury the lesser included offense of manslaughter*


Commentary, ABA Standards For Criminal Justice, The Defense Function, Standard 4-5 2 (emphasis added), *accord People v. Frierson*, 39 Cal 3d 803, 817 n 5, 705 P 2d 396, 404 n 5 (1983); *People v Brocksmith*, 162 Ill 2d 224, 642 N.E 2d 1230. 1232 (1994); *State v Boeglin*, 105 N.M. 247, 249, 731 P 2d 943, 945 (1987); *In re Trombly*, 160 Vt 215, 217-18, 627 A 2d 855, 856 (1993), *State v Ambuehl*, 145 Wis.2d 343, 357, 425 N W 2d 649, 654 (1987). Thus, the trial court properly ruled that the decision to instruct the jury on the affirmative defense of extreme emotional disturbance should be made by petitioner

Finally, after-the-fact criticism of the wisdom of petitioner's decision is unwarranted Petitioner did not have the benefit of the 20/20 hindsight that the verdict now provides Evaluated from his perspective at that time, petitioner did not act unreasonably in deciding to forego the defense of extreme emotional disturbance and rely on an insanity defense In light of the evidence at trial, the jury's acceptance of the extreme emotional disturbance affirmative defense was a long-shot at best That evidence disclosed that some months prior to the shooting, petitioner had sought to obtain a weapon with a silencer (171) His stated objective was to kill his father (171-72). The evidence disclosed also that on the night of the crime, at least three to four hours transpired between the time petitioner decided to kill his parents and the time of the murders During that time, he obtained the weapon from his father's bedroom, loaded it with three rounds, and secreted it at various locations in the house while he thought about the best time to kill his parents In his statements to police, he explained that he loaded three rounds into the weapon because he felt that he would need one for his mother and two for his father Moreover, between the time he got the weapon and the time of the murders, his girlfriend returned to the house and he discussed with her his plan to kill his parents Then, after the murders, he enlisted her aid in attempting to create an alibi and in disposing of the weapon This evidence is *35 clearly inconsistent with "the loss of self-control generally associated" with the defense of extreme emotional disturbance *People v Walker*, 64 N Y 2d 741, 743 (1984)

In light of the foregoing, it was wholly reasonable for petitioner to abandon that defense and rely solely on his insanity defense, which was also weak but certainly no weaker than one predicated on extreme emotional disturbance Petitioner supported his insanity defense at trial with expert testimony that he suffered from a mental defect (personality disorder mixed type) and "was unable to appreciate the effect of his behavior and saw it only as an immediate resolution to an immediate problem" (789) As a result, according to the defense expert, petitioner shot his parents without realizing "the ramifications or effects" of that act, *i e.*, "that they would then not be there the next day" (789). Thus, the defense expert told the jury that although petitioner was aware that he had a gun and that what he was doing when he shot his parents was wrong, he was not

Case 1:19-cv-02729-ARR Document 45 Filed 03/09/22 Page 16 of 19 PageID #: 3035

Oliver PETROVICH, Petitioner-Appellant, v. NEW YORK..., 2000 WL 33977772...

fully aware that he was actually killing his parents It was like an almost immediate conclusion to the problem, and the next day would be another day and he would get up and talk to them again

(Feldman 1026)

If credited by the jury, this testimony could have resulted in a wholly favorable verdict for petitioner because it would have established that petitioner did not "know or appreciate" the "nature and consequences" of his conduct, thereby relieving him of criminal responsibility New York Penal Law § 40 15 Clearly, this was the outcome that petitioner believed was appropriate As petitioner himself stated to the court, "I didn't do any crime in my right mind" (1279).

Moreover, a jury's finding of insanity would produce the outcome that petitioner desired Petitioner would be completely exonerated of criminal responsibility for the killing of his parents and not have to serve a prison sentence By contrast, a conviction for firstdegree *36 manslaughter, which would occur if the jury accepted the extreme emotional disturbance theory that counsel wanted presented, carried with it the potential for a substantial prison sentence (albeit a shorter one than could be imposed for a murder conviction) Repeatedly, petitioner told the court that he was aware of these sentencing considerations, and that, from his perspective, the prospects for his future were equally bleak if convicted of either of these crimes As the twenty-four-year-old petitioner stated to the court in seeking to avoid any basis for the jury to convict him of the manslaughter charge: "Well, if I get out at age forty, how much longer am I going to live?" (1282) Thus, as petitioner aptly noted, because the stakes were so high, he surely had a reasonable basis to reject as unacceptable anything that would increase the likelihood that the jury would "compromise and come in with that verdict thereby ignoring [the insanity defense]" and reducing his chances for complete victory (1271)

### B Petitioner Did Not Waive His Fundamental Right To Counsel When He Rejected Defense Counsel's Advice Hence, The Searching Inquiry Required Before A Petitioner May Waive His Fundamental Right To Counsel Was Not Necessary.

Petitioner asserts, as he did in the state courts, that when the trial court permitted him "to override defense counsel's advice that the [extreme emotional disturbance] defense be submitted to the jury, without conducting the requisite searching inquiry, [it] deprived him of his constitutional right to counsel" (see petition, ground three, petitioner's New York State Court of Appeals brief at page 12, see also petitioner's brief, p 5) In making this claim, petitioner has confused the instant situation with that where a petitioner exercises his absolute right to defend himself See *Farretta v California*, 422 U S 806 (1975), *Williams v Bartlett*, 44 F 3d 95, 99 (2d Cir 1994)

When a petitioner seeks to waive counsel and act as his own attorney during the course of a criminal action, the court must make an inquiry of the petitioner to ensure that the petitioner's waiver is knowing and intelligent See, e g, *Farretta*, 422 U S. at 835, *37 *Williams*, 44 F 3d at 100 Because "it is surely true. that the help of a lawyer is essential to assure the petitioner a fair trial" (*Farretta*, 422 U S at 832-33),[7] the inquiry must be "sufficiently searching" so as to provide reasonable certainty that the "dangers and disadvantages" of giving up the fundamental right to counsel have been impressed on the petitioner (*Farretta*, 422 U S at 835)

But, in this case, petitioner was not seeking to proceed without counsel, or even to supplant counsel in an area that is ordinarily the attorney's role to perform Thus, no searching inquiry of petitioner was necessary. When petitioner rejected defense counsel's advice concerning the jury instructions, he was simply exercising his own independent judgment regarding an important decision that he had the constitutional prerogative to make for himself (see Point IA, *supra*) Thus, because petitioner was simply asking to be permitted to make a decision reserved to him in his capacity as the person on trial, rather than one traditionally reserved to the lawyer because it entails the skill and knowledge that only a lawyer has, petitioner errs in saying that he was improperly permitted to relinquish counsel and proceed *pro se*

Rather than establishing, as petitioner now claims, that he was essentially permitted to proceed *pro se*, the record shows that petitioner never asked that counsel be discharged. Indeed, petitioner's decision not to avail himself of the affirmative defense of extreme emotional disturbance was made only after repeated consultation with defense counsel (1269-74, 1277-78, 1288-89)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
WAYNE CHIN,

        Petitioner,

    -against-

JOSEPH NOETH,

        Respondent.
------------------------------X

19-CV-02729 (ARR)

AFFIDAVIT OF SERVICE

STATE OF NEW    )
                ).SS:
WESTCHESTER COUNTY)

    I, WAYNE CHIN, being duly sworn, deposes and says:

    1. I am the above-named petitioner and have caused to serve a copy of my Motion made pursuant to Rule 60(b) of the Federal Rules of Civil Procedure upon the below listed party;

        Eric Gonzalez, Esq.
        District Attorney
        Kings County
        350 Jay Street
        Brooklyn, New York 11201

By placing the same in a post-paid stamped envelop and delivering it to the custody and care of the authority here at Sing Sing Correctional Facility, 354 Hunter Street Ossining, New York 10562-5442, on this 6th, day of March, 2022, as due and sufficient service.

                                            _____
                                            Wayne Chin
                                            Din: 09-A-6287
                                            Petitioner; Pro Se

```
WAYNE CHIN
 DIN: 09-A-6287
 SING SING CORR. FAC.
 354 hunter street
 Ossining, new york 10562-5442
```




```
                    PRO SE INTAKE CLERK
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
                    225 CADMAN PLAZA EAST
                    BROOKLYN, NEW YORK 11201


       LEGAL   MAIL
```

